**SENZA–GEL CORPORATION, et al.,**
**Appellants/Cross-Appellees,**

v.

**John B. SEIFFHART, Goehring Meat,**
**Inc., and Ohi, Inc.,**
**Appellees/Cross-Appellants.**

Appeal Nos. 85–2780, 85–2781.

United States Court of Appeals,
Federal Circuit.

Oct. 2, 1986.

Elmer S. Albritton, Flehr, Hohbach, Test, Albritton & Herbert, San Francisco, Cal., argued for appellants/cross-appellees. With him on brief were Donald N. MacIntosh, Richard F. Irecartin and Richard P. Doyle, Jr.

Ernest H. McCoy, Oakland, Cal., argued for appellees/cross-appellants. With him on brief were Robert M. Brown, Brown & Finney, San Francisco, Cal. and Charles Townsend, Jr., Townsend & Townsend, San Francisco, Cal.

Before MARKEY, Chief Judge, BENNETT, Senior Circuit Judge, and NIES, Circuit Judge.

MARKEY, Chief Judge.

Certified question from the United States District Court for the Eastern District of California, relating to the criteria employed by the court in rendering summary judgment of patent misuse. We answer the inquiry in the affirmative.

### Background

Appellants (Senza-Gel) sued all appellees, asserting numerous claims under state and federal law. One such claim was for infringement of Senza-Gel's process patent No. 3,644,125.[1] The district court separated the issues of patent validity and direct infringement for trial before all other issues. The jury returned a verdict that the patent was valid and infringed and the court denied Goehring's motion for JNOV. Months later, appellees moved to amend

1. Goehring Meat, Inc., was charged with direct infringement. OHI, Inc., was charged with contributory infringement because it sold the machine used by Goehring Meat, Inc. John B. Seiffhart was charged with inducing infringement.

their answer to add an allegation of patent misuse and an antitrust counterclaim. When that motion was granted, appellees (Goehring) filed motions for summary judgment of patent misuse and antitrust violation under § 1 of the Sherman Act, 15 U.S.C. § 1 (1982). The court granted the former and denied the latter.

Before us, Senza-Gel challenges the grant of the motion to amend and the grant of summary judgment of patent misuse. Goehring seeks reversal of the denial of summary judgment of antitrust violation and a determination by this court that it had established certain elements of its counterclaim not reached by the district court.

### Opinion and Orders of the District Court

The district court extensively discussed the evidence, the law, and the parties' arguments. Citing authorities, the court delineated the difference it correctly saw between patent misuse as a defense in a suit for patent infringement and as a basis for a complaint for antitrust violation. The court noted that the parties confused the two concepts (as they have on appeal), and that courts have done so as well.

The court cited the license agreements and testimony of Senza-Gel's principals (submitted at the patent issues trial as proof of commercial success of the patented process) as establishing Senza-Gel's refusal to permit use of the process of the patent in suit unless the user leased Senza-Gel's "macerator" machine, and the undisputed fact that the process and macerator were always leased together. The absence of conflict between the jury verdict and the grant of summary judgment of misuse was noted.

Reviewing legal history, the court discussed the "staple article of commerce" concept as it relates to contributory infringement, patent misuse, and antitrust. The court noted that Senza-Gel had insulated from review the validity of what it called its patent on the macerator. Having determined that Senza-Gel's macerator was useful in non-infringing processes, the court found it a staple article, as was OHI's machine that Senza-Gel called a "knock-off" of the macerator; the court then found that the process and the macerator (which performed one step of the process) were two "things"; and that those two things were "tied".

Because the parties had not raised the issue, the court declined to discuss any question of package licensing, but noted that the mere leasing together of the process and machine would not suffice if the effect were not, as it was here, to expand the "ambit" of the process patent. Senza-Gel's sole argument (that no one asked to lease the process alone and there was thus no coercion) was rejected.

Because Senza-Gel had submitted no evidence of business justification or other adequate response, the court concluded that no genuine issue of material fact on the misuse issue was present.

Noting that Senza-Gel had conditioned access to its process by requiring a lease of the macerator at prices making it uneconomical to lease the process and practice it with a different machine, and that Senza-Gel had thereby extended the scope of the process patent to cover the macerator, the court found misuse and granted Goehring's motion for summary judgment.

The court denied Goehring's motion for summary judgment of antitrust violation because genuine issues of material fact (on whether Goehring had suffered an injury the Sherman Act sought to remedy; whether, for antitrust purposes, as distinguished from patent misuse analysis, a single product was being sold by Senza-Gel) were present.

In disposing of Senza-Gel's motion for reconsideration, the court twice noted that no final judgment had been entered and that the motion was inappropriate under Fed.R.Civ.P. 59(e) or 60(b). Nonetheless, the court employed its inherent power to reconsider its interlocutory decrees and considered the motion in light of its Local Rule 230(k). Senza-Gel's assertion that it

had been denied oral argument was correctly rejected not only as insufficient, but as contrary to fact; its list of 14 fact issues was rejected because it reflected no *material* fact issues; and its notion that it was privileged to argue the motion *de novo* was in direct disregard of Rule 230(k).

Senza-Gel's sole new argument on reconsideration (business justification) was found unsupported by facts, set forth in affidavits or otherwise, and was not accompanied by any explanation for its untimeliness. The court recognized that a motion for reconsideration is not a chance for a second bite, and that a grant of such a motion not based on newly found, previously unknown facts, would enable the movant to "sandbag" an adversary. Finding that Senza-Gel had not borne its burden of showing why the court should again consider its original arguments or why it should be permitted to raise new defenses to Goehring's motion, the court denied the motion to reconsider.[2]

### *Certification*

The district court's April 11, 1985 Opinion and Order included:

#### D. *Certification for Appeal*

Having found for defendant, it cannot be denied that the concept of patent misuse, outside of an antitrust context, is neither clear nor consistent. Thus, in granting defendants' motion for summary judgment on the issue of patent misuse, it seems to the court that this is a situation where "reasonable minds could differ." Therefore Summary Judgment is hereby GRANTED in favor of defendants, and the matter is certified for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

\* \* \* \* \* \*

4. The granting of summary judgment on defendants' motion relative to patent misuse and the denial of plaintiffs' motion for injunctive relief are cer-

tified for immediate appeal pursuant to 28 U.S.C. § 1292(b).

The district court's June 5, 1985 Order denying Senza-Gel's motion for consideration included:

### CERTIFICATION OF QUESTIONS

Alternatively, plaintiffs request the court to clarify its order of certification. This is a reasonable and proper request and the court will now specify the questions certified for interlocutory appeal:

#### A. *Plaintiffs' Motions*

1. Is the proper mode for analysis of a claim of patent abuse [sic, misuse] in a tying context the three step analysis undertaken by this court, namely:

*First:* Determine whether there are two things tied, i.e., whether there are separable or inseparable items; if so

*Second:* Determine whether the "thing" which is assertedly tied to the patented item is a staple or non-staple item in commerce; if staple

*Third:* Determine whether in fact they are tied.

2. In determining whether items are separable or inseparable for patent abuse [sic, misuse] questions, is the correct test whether the two items assertedly tied are separately patentable?

3. Whether this court was correct in holding that the test for prohibited patent misuse turns on whether the tied product is a staple item in commerce, and if the tied product is a staple, a patent misuse defense lies even though the suit alleges direct infringement?

4. Whether the test for a prohibited tying arrangement focuses on whether the patent holder forbids use of the patent without the purchase from him of a staple item in commerce, and thus the absence of any request by a customer for use of the patent separately is not a defense.

---

**2.** Senza-Gel inappropriately makes the same arguments on appeal, in a second effort to wipe the scoreboard clean and play the game over.

5. Whether, despite plaintiffs' failure to tender any facts upon which a business justification for patent misuse might be premised, summary judgment on behalf of the defendant based upon patent misuse should nevertheless be denied since, despite the absence of evidence, it is possible as an abstract matter that plaintiffs can prove a business justification?

The district court, indicating that it did not think the issue met the standards for interlocutory appeal, nonetheless conditionally certified its denial of Goehring's motion for summary judgment of antitrust violation, and this question:

6. In the Ninth Circuit, in an antitrust case, is the proper standard for determining whether the seller is tying one product with another rather than offering a single package, to be determined by looking at consumer behavior? That is, is it correct that the relationship between the producer's selling decision to market demand determines the existence of legally separable products?

### The Parties' Presentations on Appeal

Incredibly, though they filed briefs totalling 145 pages, neither party addresses certified question No. 1 in those briefs. Neither says the district court's three-step analysis was or was not proper. Each merely accepts the analysis and then argues its application to this case. Only Senza-Gel's brief even quoted certified question No. 1.

Equally incredible is the parties' total failure either to mention or to address in their briefs any of the other questions certified. As a result of memoranda filed in support of the parties' request that certification be accepted, this court noted only the district court's certification of the grant of summary judgment of misuse, the denial of Senza-Gel's motion for injunction,[3] and denial of Goehring's motion for summary judgment of antitrust violation.

The parties have rushed at each other (and at the court) with guns blazing. Each fires at every perceived target of opportunity it can create in relation to the grant of the motions to amend and summary judgment of misuse and the denial of summary judgment of antitrust violation. Senza-Gel proceeds on the erroneous premise that a final judgment was entered on the jury's verdict.[4] Neither party fully recognizes that the case is at an interlocutory stage. Neither recognizes the findings, conclusions, and reasoning in the district court's orders of April 11 and June 5, 1985.

### Analysis

■ While cautioning that we are not here explicating all of the analytical parameters that may be applicable to patent misuse questions in future cases, we find no impropriety in the district court's employment of the three-step analysis it set forth in its certified question No. 1, in light of the record before it in this case. We therefore answer certified question No. 1 in this case in the affirmative. *See, e.g., Dawson Chemical Co. v. Rohm & Haas Co.,* 448 U.S. 176, 100 S.Ct. 2601, 65 L.Ed.2d 696, 206 USPQ 385 (1980).[5]

Though we do not directly answer the other questions listed above, in view of the

---

3. Though denial of Senza-Gel's request for an injunction was certified, the correctness of that denial is obvious, the patent being unenforceable because of misuse, *infra.*

4. Indeed, this court learned only upon checking the record, that the district court *expressly stayed* entry of judgment until completion of the entire trial on all issues, and that it *thrice* remarked that it had entered no final judgment. Senza-Gel wastes the time of this court in repeatedly, incorrectly, and without citation of authority, saying the jury's verdict "constitutes a final judgment."

5. Commentators and courts have questioned the rationale appearing in Supreme Court opinions dealing with misuse in view of recent economic theory and Supreme Court decisions in non-misuse contexts. *See Windsurfing International v. AMF, Inc.,* 782 F.2d 995, 1001–02 n. 9, 228 USPQ 562, 567 n. 9 (Fed.Cir.1986), *cert. denied,* —— U.S. ——, 106 S.Ct. 3275, 91 L.Ed.2d 565 (1986). We are bound, however, to adhere to existing Supreme Court guidance in the area until otherwise directed by Congress or by the Supreme Court.

parties' failure to brief them, our discussion of the arguments the parties did make bears an obvious relation to the substance of many of those questions.

Though the district court certified only the questions listed above, and though its grant of Goehring's motion to amend is a purely procedural interlocutory matter and was not certified, this court has stated that its mandate includes review of "trial court *orders,* not merely the particular question certified". *United States v. Connolly,* 716 F.2d 882, 884–85 (Fed.Cir.1983) (emphasis in original), *cert. denied,* 465 U.S. 1065, 104 S.Ct. 1414, 79 L.Ed.2d 740 (1984). We therefore consider the arguments made in their briefs here by the parties.

### Appeal No. 85–2780

In Appeal No. 85–2780, Senza-Gel attacks the grant of the motion to amend and the grant of summary judgment of misuse.

### The Motion to Amend

Senza-Gel devotes the major segments of its briefs to an assertion that the district court abused its discretion in granting Goehring's motion to amend its answer by adding the allegation of patent misuse, offering two arguments: (1) patent misuse was waived as an affirmative defense when not pleaded before the jury returned its verdict on validity and infringement; and (2) patent misuse was barred by *res judicata.*

▆▆▆ Argument (1) fails because: (a) that the amendment led to summary judgment of misuse did not, as Senza-Gel repeatedly says, "preempt the jury verdict." That verdict stands unaffected and, as the district court pointed out, the patent remains valid and infringed; [6] (b) the controlling issue on the present motion to amend in the midst of trial is not Goehring's delay,

but whether Senza-Gel would be prejudiced.

A motion to amend being entirely a procedural matter not unique to the field of patent law, we apply the discernable law of the Ninth Circuit. *See, e.g., Panduit Corp. v. All States Plastic Manufacturing Co.,* 744 F.2d 1564, 1574–75, 223 USPQ 465, 471 (Fed.Cir.1984).

The district court's action on a motion for leave to amend should be reversed only if the action is an abuse of discretion, in the light of the "strong policy to permit the amending of pleadings." *Howey v. United States,* 481 F.2d 1187, 1190 (9th Cir.1973) (abuse of discretion to deny motion to amend filed five years after complaint filed). The Ninth Circuit has noted on several occasions, *see, e.g., Hurn v. Retirement Fund Trust of Plumbing, Heating & Piping Industry,* 648 F.2d 1252, 1254 (9th Cir.1981), that the "Supreme Court has instructed the lower federal courts to heed carefully the command of Rule 15(a), F.R. Civ.P., by freely granting leave to amend when justice so requires." *Howey,* 481 F.2d at 1190 (citing *Foman v. Davis,* 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)); *see International Association of Machinists and Aerospace Workers v. Republic Airlines,* 761 F.2d 1386, 1390 (9th Cir.1985). Thus the nonmovant bears the burden of showing why amendment should not be granted.

Several factors govern the granting of a motion to amend: (1) undue delay, (2) bad faith, (3) prejudice to the nonmovant, and (4) futility of amendment. *Loehr v. Ventura County Community College District,* 743 F.2d 1310, 1319 (9th Cir.1984). The single most important factor is whether prejudice would result to the nonmovant. *William Inglis & Sons Baking Co. v. ITT Continental Baking Co.,* 668 F.2d 1014, 1053 n. 68 (9th Cir.1981), *cert. denied,* 459

---

6. Senza-Gel's briefs devote many pages based on an assumption that the amendment and summary judgment of misuse are in conflict with the jury verdict. Senza-Gel not only fails to explain how such conflict could exist, but totally ignores the clear statement of the district court and the Supreme Court

cases cited by the court in support of that statement. Without so stating, Senza-Gel means that its inability to enforce its now unenforceable patent conflicts with what it could have done absent the amendment and summary judgment of misuse.

U.S. 825, 103 S.Ct. 58, 74 L.Ed.2d 61 (1982); *see Wyshack v. City National Bank*, 607 F.2d 824, 826 (9th Cir.1979). "Where there is lack of prejudice to the opposing party and the amended complaint is obviously not frivolous, or made as a dilatory maneuver in bad faith, it is an abuse of discretion to deny such a motion." *Hurn*, 648 F.2d at 1254 (quoting *Howey*, 481 F.2d at 1190–91); *Keniston v. Roberts*, 717 F.2d 1295 (9th Cir.1983). " 'The mere fact that an amendment is offered late in the case is … not enough to bar it; amendments may be offered at trial, or even after reversal and remand.' " *Howey*, 481 F.2d at 1191 n. 3 (quoting 3 J. Moore, Moore's Federal Practice, § 15.08, 0.835); *see also United States v. Webb*, 655 F.2d 977, 980 (9th Cir.1981).

■ Though it bore the burden of showing prejudice, Senza-Gel's sole argument on that score before the district court rested on counsel's statement (unsupported by any affidavit or medical evidence) that a major witness was too ill to testify. That statement was countered before the district court by opposing counsel's statement that the witness had been observed carrying out business as usual. To the extent that the district court was willing to accept counsel's statements in place of evidence, the court apparently accepted that of opposing counsel, an election not to be gainsaid by this court, particularly in light of Senza-Gel's failure to present any evidence in support of its burden.[7] Argument (2) fails because the trial is on-going. No final judgment has ever been entered, and Senza-Gel's citations of cases in which judgment had been entered are inapt. *Res judicata* is simply inapplicable, the action not having been terminated and the decision to permit amendment, as well as any other interlocutory decision or order, being subject to revision by the district court at any time before entry of final judgment. Fed. R.Civ.P. 54.

Senza-Gel having failed to establish prejudice, it is unnecessary to discuss Senza-Gel's argument that Goehring failed to establish excuse for its delay in amending, or Goehring's arguments that the court's bifurcation order precluded trial on misuse, that it learned of the basis for its amendment only from review of the testimony at trial, or that the misuse issue will arise in any event in defense to Senza-Gel's Lanham Act claim and in connection with other claims when those claims are tried.[8]

The district court committed no abuse of discretion in granting the motion to amend.

### *Summary Judgment of Misuse*

■ Senza-Gel's principals testified at trial that it never licensed or "leased" the process patent on which it was suing without leasing its "Macerator" machine useable in carrying out a step of the patented process, and it is undisputed that the process and machine were, as a matter of established policy, always leased together. Though Senza-Gel had obtained patent No. 3,893,384, which it says covers its machine, it elected not to bring that patent into court and the district court referred to and treated the machine as unpatented for the purposes of this trial. Senza-Gel not only failed to involve its machine patent and to establish the relationship of that patent to the machine leased, it has failed to establish on this certified appeal that the district court was clearly erroneous in finding that the machine as leased was suitable for

---

**7.** Counsel's statements are not evidence. On appeal, Senza-Gel emphasizes, irrelevantly, that the witness has since died. That subsequent fact cannot substitute for failure to establish prejudice at the time the motion to amend was argued, even if we were to adopt counsel's unsupported inference that the witness died from an illness afflicting him at the time the motion was argued.

**8.** Misuse relates to unenforceability and 35 U.S.C. § 282(1) lists unenforceability as a defense that must be pleaded in any action involving validity or infringement. The argument here, however, is over *when* it must be pleaded. That argument implicates the general rule that amendments are to be freely granted *unless* substantial prejudice to the other side would result. Though the parties here argue the adequacy of Goehring's excuses for not amending earlier, the dispositive issue, as indicated in the text, is Senza-Gel's failure to show prejudice.

substantial non-infringing use and therefore a staple article of commerce.[9] Both parties cite antitrust cases in contesting the merits of the grant of summary judgment of misuse. The parties thus fail to distinguish between patent misuse as a defensive shield and patent misuse as an offensive sword. In both cases, the patentee's act is the same. That act may serve, as here, as a defense to a charge of patent infringement. That act may also serve as an element in a complaint charging antitrust violation.[10] Thus, as the Supreme Court has said, the patentee's act may constitute patent misuse without rising to the level of an antitrust violation. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 140, 89 S.Ct. 1562, 1585, 23 L.Ed.2d 129, 161 USPQ 577, 593 (1969). All that a successful defense of patent misuse means is that a court of equity will not lend its support to enforcement of a mis-user's patent.

On the record before it, the district court's grant of summary judgment on the defense of misuse was not in conflict with its denial of summary judgment on the counterclaim for antitrust violation.

■ The sole argument made by Senza-Gel to the district court on the motion for summary judgment of misuse before that motion was granted was that there was "no evidence" that it had coerced lessees, who had thus entered "voluntary" leases. Every other argument now made before us, and every assertion of factual issue, was either never presented to the district court or was belatedly offered in Senza-Gel's motion for reconsideration. They were properly rejected by the district court under Fed.R.Civ.P. 59(e) and Local Rule 230(k).[11] Thus we will not consider Senza-Gel's arguments that: consideration must be limited to use of its machine in the ham processing industry; the machine cannot be a staple article because it is patented; Goehring's cases are inapt because they deal with misuse of a product patent; there can be no tie until a lessee uses the machine and performs the process; there can be no tie because its process and machine patents are "blocking" and can therefore be legally "leased" together; and the district court failed to make findings on whether the process could be practiced without the machine, and on whether there is a separate market demand for the machine.[12] The arguments that Senza-Gel did make before the district court (that its lessees acted voluntarily and that there was no evidence it ever "coerced" a lessee of

9. Senza-Gel's reliance on the need to grant the lessee of a patented machine an implied license to use it is unavailing here. Under Senza-Gel's undisputed policy, the machine was never leased alone and no implied license to use it was ever involved. The issue below was whether Senza-Gel was tying a license to practice *the process of the patent it sued on* and a lease of its machine, which, on the state of the record when the court found misuse, must be considered a staple article of commerce.

10. A successful patent misuse defense results in rendering the patent unenforceable until the misuse is purged. A successful complaint for antitrust violation results not only in unenforceability, but also, *inter alia,* in treble damages.

11. Senza-Gel seizes upon the district court's frank and laudably candid statement of unfamiliarity with the esoterics of patent law and the difference between process and machine patents, printing at length in its brief the court's statement. The role of counsel includes that of explaining, when necessary, such matters to the court. If counsel fails in that role, that failure cannot be cured by arguments made to us that were not made before the district court, nor can that failure lead to a reversal absent a showing that the district court, for whatever reason, committed reversible error.

12. Senza-Gel's main brief simply makes all these arguments, with no recognition that they were either never made below or were rejected when offered in an unsupported motion for reconsideration. Whether any of these arguments would have been successful if timely made is a question not before us. Whether they may be successfully made in connection with the trial of the Lanham Act, antitrust, or other issues as the trial progresses must be determined in the first instance by the district court. Moreover, Senza-Gel's argument that the court failed to make a finding that Senza-Gel was extending its process patent grant is contrary to the record.

the process) are refuted by the record. Its own witnesses said a lease of one was never available without a lease of the other, Senza-Gel submitted no evidence on voluntariness or on business justification, and a witness testified without contradiction that his express request to lease the process without the machine was refused by Senza-Gel.

Accordingly, the grant of summary judgment on the defense of misuse is affirmed.

### Appeal No. 85–2781

In appeal No. 85–2781, Goehring requests this court to reverse the denial of its motion for summary judgment of antitrust violation and direct the district court to enter judgment in its favor on its antitrust counterclaim. Both parties devote large segments of their briefs to that request. Neither recognizes that the sole antitrust matter before us resides in the question certified by the district court.[13]

A denial of summary judgment is not only *not* a "final judgment", and not appealable, it is not a judgment at all. It is quite simply and solely a determination that one or more issues require a trial. *Glaros v. H.H. Robertson Co.*, 797 F.2d 1564, 1573, 230 USPQ 393, 399 (Fed.Cir. 1986).

Here, the district court recognized several issues of fact that must be determined before one can be held liable for an illegal tying arrangement in violation of the antitrust laws. Because the district court determined that a genuine issue of material fact existed as to whether there was a tying arrangement consisting of two separate and distinct products for antitrust purposes, it held that determination dispositive of Goehring's motion for summary judgment. The district court correctly determined there was therefore no need to examine whether there were other genuine issues of material fact in this case, e.g., sufficient economic power in the tying

product, and an effect on a "not insubstantial" amount of commerce in the tied product market. *See, e.g., Robert's Waikiki U-Drive, Inc. v. Budget Rent-A-Car Systems, Inc.*, 732 F.2d 1403, 1407 (9th Cir. 1984); *Moore v. Jas. H. Matthews & Co.*, 550 F.2d 1207, 1212 (9th Cir.1977), and cases cited therein.

Goehring insists that this court hold "as a matter of law" that it had established the other factual requisites for establishing Senza-Gel's violation of the antitrust laws. Matters of law rest, however, on facts determined. There is no basis for Goehring's request, the district court having entered no findings on those elements and no finding that issues of material fact in relation to them are either present or absent, and this court having no authority to determine facts *de novo*.

Concerning certified question No. 6, on determination of whether there are two separate and distinct products for antitrust purposes, Goehring argues that *Rex Chainbelt, Inc. v. Harco Products, Inc.*, 512 F.2d 993, 185 USPQ 10 (9th Cir.), *cert. denied*, 423 U.S. 831, 96 S.Ct. 52, 46 L.Ed.2d 49 (1975), controls, and that the "key factor" in both antitrust and patent misuse contexts is whether the tied product was a "staple", i.e., capable of non-infringing uses. Goehring contends that the district court erred in holding that a question of material fact concerning consumer behavior (character of demand) is involved in deciding its motion for summary judgment of antitrust violation. We disagree.

*Rex Chainbelt* sheds no light on the question presented. It presented no analysis on the question of whether there were in fact two separate products involved. In that case, the district court found, after a trial, that there were in fact two separate and distinct products. 181 USPQ 432, 436 (C.D.Cal.1973) (citing *Locklin v. Switzer*, 297 F.2d 39, 131 USPQ 405 (7th Cir.1961)).

---

**13.** Though the district court referred to certification of Goehring's "motion", and this court's acceptance improvidently repeated that reference, certification of the denial of summary judgment, as the district court surmised, does not in this case meet the criteria of 28 U.S.C. § 1292(b).

That finding, though mentioned, was apparently uncontested on appeal.

The district court here relied principally on *Klamath-Lake Pharmaceutical Association v. Klamath Medical Service Bureau*, 701 F.2d 1276 (9th Cir.), *cert. denied*, 464 U.S. 822, 104 S.Ct. 88, 78 L.Ed.2d 96 (1983). In *Klamath-Lake*, the Ninth Circuit stated:

> Separateness is determined in part by whether the products are normally sold or used as a unit and whether their joint sale effects savings beyond those of combined marketing. *Siegel v. Chicken Delight, Inc.*, 448 F.2d 43, 48 (9th Cir.1971), *cert. denied*, 405 U.S. 955, 92 S.Ct. 1172, 31 L.Ed.2d 232 (1972) (describing the "function of the aggregate" test). The critical factor is the extent to which a producer's offerings are in response to independently structured consumer demand. Products that function together and are sold in combination may still be "separate" if consumers would prefer to buy them individually at the price necessary to market them separately. Tying denotes illegal coercion: "Rules governing tying arrangements are designed to strike, not at the mere coupling of physically separable objects, but rather at the use of a dominant desired product to compel the purchase of a second, distinct commodity." *Id.* at 47 (citing *Times-Picayune Publishing Co. v. United States*, 345 U.S. 594, 614, 73 S.Ct. 872, 883, 97 L.Ed. 1277 (1953)). *Whether a producer's combined products should be considered as separate can be decided only by looking at consumer behavior.* It is the relationship of the producer's selling decision to market demand, not the physical characteristics of the products alone, that determines the existence of legally separable products.

701 F.2d at 1289 (footnote omitted) (emphasis supplied); *see also Grason Electric Co. v. Sacramento Municipal Utility District*, 571 F.Supp. 1504, 1526 (E.D.Cal.1983).

Since *Klamath-Lake*, the Supreme Court has stated "that the answer to the question whether two products are involved turns not on the functional relationship between them, but rather on the character of the demand for the two items." *Jefferson Parish Hospital District No. 2 v. Hyde*, 466 U.S. 2, 19, 104 S.Ct. 1551, 1562, 80 L.Ed.2d 2 (1984) (footnote omitted). The Court noted that "a tying arrangement cannot exist unless two separate product markets have been linked." *Id.* at 21, 104 S.Ct. at 1563. There, the Court held that anesthesiological services were separate from hospital services because there was a "sufficient demand for the purchase of anesthesiological services separate from hospital services to identify a distinct product market in which it is efficient to offer anesthesiological services separately from hospital services." *Id.* at 21–22, 104 S.Ct. at 1563 (footnote omitted); *see also Drinkwine v. Federated Publications, Inc.*, 780 F.2d 735, 741 (9th Cir.1986) (separability is "a question of character of demand"); *Digidyne Corp. v. Data General Corp.*, 734 F.2d 1336, 1339 (9th Cir.1984) (separability established by demand for tied product), *cert. denied*, —— U.S. ——, 105 S.Ct. 3534, 87 L.Ed.2d 657 (1985).

Goehring has shown no basis for answering certified question No. 6 in the negative. Its effort to equate the determination of product separability for misuse purposes with product separability for antitrust purposes must fail in light of Ninth Circuit and Supreme Court law, which requires that "consumer behavior" (market demand) be examined to determine the separability of products in determining whether there is a tying arrangement for antitrust purposes. Thus there is no conflict in the district court's holding that there are two products sufficient to sustain a defense of patent misuse, and its determination that a genuine issue of material fact exists on whether there are two products for antitrust purposes.[14]

---

**14.** The law of patent misuse in licensing need not look to consumer demand (which may be non-existent) but need look only to the nature of the claimed invention as the basis for determining whether a product is a necessary concomitant of the invention or an en-

We therefore answer the district court's certified question No. 6 in the affirmative.

## CONCLUSION

Certified question No. 1 is answered in the affirmative. Senza-Gel's arguments challenging the district court's grant of the motion to amend and its grant of summary judgment on the defense of patent misuse are rejected. Goehring's arguments seeking reversal of the denial of its motion for summary judgment on its antitrust complaint are rejected. Certified question No. 6 is answered in the affirmative.

AFFIRMED.

BENNETT, Senior Circuit Judge, dissenting.

I respectfully dissent. I would reverse the district court for abusing its discretion in allowing the defendant in an infringement suit to amend its pleadings to include the defense of patent misuse and a counterclaim for antitrust violations where the motion to do so was not filed until 7 months after a jury verdict against that defendant on validity and infringement and where there was no good cause shown for the delay.[1] The court's action in allowing the motion was actually made over 10 months after the jury verdict. Further, I would vacate the summary judgment which was predicated on the wrongful amendment.

I can only offer my condolences to appellants when they read, as I did, the majority's approval of the dismissal by the trial court of Senza-Gel's motion for reconsideration. The majority approves the district court's view that "a motion for reconsideration is not a chance for a second bite, and that a grant of such a motion not based on newly found previously unknown facts, would enable the movant to 'sandbag' an adversary." How Senza-Gel has been turned into the "sandbagger" instead of the "sandbagged" in this case is beyond my comprehension, as I am sure it is beyond Senza-Gel's, when Senza-Gel's only "crime" was in allegedly rearguing its case in a timely motion to reconsider as contrasted to Goehring's wait of 7 months after trial and 4½ years after first being made aware of an issue before raising it.[2] Perhaps Senza-Gel would have received a more sympathetic hearing by the district court below and the majority here if it had waited at least 7 months to raise its argument. Even better, it might have been able to think of a completely new issue in that time. In fact, unless Goehring could show some undefined but high level of prejudice, the majority opinion will give Senza-Gel until at least the entry of judgment after the antitrust trial in which to think of a saving argument to add to its pleadings.

---

tirely separate product. The law of antitrust violation, tailored for situations that may or may not involve a patent, looks to a consumer demand test for determining product separability.

**1.** I agree with the majority that under our precedents we have jurisdiction to consider the issue of whether the district court abused its discretion in granting Goehring's motion for leave to amend. *Minnesota Chippewa Tribe (No. 19) Red Lake Band v. United States,* 768 F.2d 338, 340 n. 2 (Fed.Cir. 1985); *United States v. Connolly,* 716 F.2d 882, 884 (Fed.Cir.1983), *cert. denied,* 465 U.S. 1065, 104 S. 1414, 79 L.Ed.2d 740 (1984). *See also Merican, Inc. v. Caterpillar Tractor Co.,* 713 F.2d 958, 962 n. 7 (3d Cir.1983), *cert. denied,* 465 U.S. 1024, 104 S.Ct. 1278, 79 L.Ed.2d 682 (1984); *Murphy v. Heppenstall Co.,* 635 F.2d 233, 235 n. 1 (3d Cir.1980), *cert. denied,* 454 U.S. 1142,

102 S.Ct. 999, 71 L.Ed.2d 293 (1982); *In re Oil Spill by the "Amoco Cadiz" off the Coast of France March 16, 1978,* 659 F.2d 789, 793 n. 5 (7th Cir.1981); *see generally* 9 J. Moore, B. Ward, & J. Lucas, Moore's Federal Practice ¶ 110.25[1] (2d ed. 1985).

**2.** This says nothing of the chutzpah of Goehring who brazenly asserts in its brief on this same issue:

"The trial court also ruled that the mandate of Rule 56, Rule 1 (requiring construction of the Federal Rules 'to secure the just, speedy, and inexpensive determination of every action,'), and Local Rule 230(k) required plaintiffs to make their arguments and offer their evidence in the original briefing (JX 369–370). Having failed to do so, defendants submit that all of plaintiffs' arguments, other than 'coercion' and 'voluntary agreements' are waived and should not be considered on appeal."

## BACKGROUND

Because the history of this case is material to the unconscionability of Goehring's conduct in this case, I first set forth some of the background neglected by the majority. Senza-Gel brought suit against Goehring Meat, Inc., on November 1, 1979, for infringement of U.S. Patent No. 3,644,125 ('125), which claims a process for producing whole boneless hams. OHI, Inc., was included as a co-defendant because it supplied Goehring Meat with the machine by which the process was infringed. John Seiffhart, an employee of Goehring Meat, was included as a defendant because it was at his suggestion that the company began using the OHI machine.

The claimed process requires halving and deboning a raw ham, macerating (making parallel closely spaced slits) the cut surfaces of the ham, compressing the ham to cause interlock of the macerated surfaces and cooking the ham while it is compressed. Senza-Gel is also the assignee of U.S. Patent No. 3,893,384 ('384 patent), which claims a machine capable of macerating meat, but infringement of this patent is not alleged in the present suit. The commercial embodiment of the '384 patent is known as the "MACERATOR."

During the pretrial period of more than 4 years, Goehring filed three different motions for summary judgment on the issues of patent validity and noninfringement. All were denied. These motions included other elements, some of which were granted, including a partial summary judgment finding defendant OHI, Inc., not liable for contributory infringement. Goehring also twice moved to file supplemental pleadings during this period to raise the affirmative defense of "unclean hands" because of an ad placed by Senza-Gel that allegedly contained false statements concerning the '125 patent. No mention was made in any of these motions of the affirmative defense of patent misuse or of antitrust violations.

In a Status Conference Order of July 1, 1982, the district court bifurcated the parties' claims for trial, stating:

The court hereby severs the claims of patent validity and infringement from all other claims in this matter. The issues of patent validity and infringement shall be tried before all other issues.

A jury trial was held on the issues of patent invalidity and infringement from January 11 to January 27, 1984. The jury's verdict, rendered January 30, 1984, was that the '125 patent was valid and infringed by Goehring.

Goehring moved for a directed verdict, judgment n.o.v., and a new trial on February 6, 1984. These motions were extensively briefed and rebriefed by the parties, and were all denied by order of the district court on July 24, 1984. In addition, the order, which was accompanied by an extensive opinion, stayed entry of judgment pending an accounting for damages and resolution of certain other issues reserved by the Status Conference Order. These other issues included alleged Lanham Act violations, but did not include patent misuse or antitrust issues which even at this late date had yet to appear in the case.

On August 31, 1984, Goehring filed a motion for leave to file an amended answer alleging for the first time the affirmative defense of patent misuse and a counterclaim for antitrust violations. Both were based on an allegation that Senza-Gel was illegally tying its '125 process with its machine covered by the '384 patent, the MACERATOR. This motion was granted on December 5, 1984, ten months after a jury verdict finding Senza-Gel's patent valid and infringed.

On January 29, 1985, Goehring filed motions for summary judgment on the patent misuse defense and the antitrust counterclaim. The district court granted summary judgment on the patent misuse defense and denied summary judgment on the antitrust counterclaim in an order of April 11, 1985. The decisions were left standing after a motion to reconsider was filed by Senza-Gel but, in the order of the court denying the motion, some issues related to the disposition of the motions for summary judgment on the patent misuse and antitrust issues

were certified to this court for our consideration under 28 U.S.C. § 1292(b).

## OPINION

Senza-Gel argues that it was an abuse of discretion for the district court to grant Goehring's motion for leave to file an amended answer on the grounds that Goehring waived its right to amend by waiting until 7 months after the jury verdict and some 4½ years after it first came into possession of facts raising the tying issue.

The starting point in considering whether the district court abused its discretion in allowing the amendment is Fed.R.Civ.P. 15(a). Rule 15(a) states that leave to amend "shall be freely given when justice so requires." The Supreme Court, in *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962), stated that leave to amend should be freely granted unless there is an "apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." [3] Goehring and the majority correctly cite as precedent the Ninth Circuit decision in *Howey v. United States*, 481 F.2d 1187, 1190 (9th Cir.1973), which stresses that the "crucial factor" in determining "the propriety of a motion for leave to amend" is the "resulting prejudice to the opposing party." The majority affirms on this issue because it finds that Senza-Gel has failed to show prejudice resulting from the delay.

Senza-Gel argues that it is prejudiced in several ways, although the majority treats only Senza-Gel's claim that Goehring's delay rendered several crucial witnesses unavailable. Here there was evidence that plaintiff's key witness, Sal LoBiondo, co-owner of Senza-Gel, although ill was available at trial. However, at the hearing on the motion for leave to amend, Senza-Gel's attorney informed the court that Sal LoBiondo's condition had deteriorated such that his memory was seriously affected and indicated that this condition would severely impair his usefulness as a witness. In fact, he died before the summary judgment for patent misuse was granted. The majority's statement that opposing counsel said that Sal LoBiondo was "carrying out business as usual" has no support in the record. Instead, Goehring's attorney merely alleged that one of his clients had heard that Sal LoBiondo was telling certain customers not to buy Goehring's products or else they would be sued. Although I agree that neither counsel's statements are evidence, the district court chose to rely on them, and I think that Senza-Gel's attorney's direct observations contrast favorably with Goehring's attorney's repetition of double hearsay that only inferentially at best refutes the claim of witness unavailability. Although I might not find this alone sufficient to establish prejudice, Senza-Gel offers proof of additional prejudice ignored by the majority.

Senza-Gel refers us to two cases, *Evans v. Syracuse City School Department*, 704 F.2d 44 (2d Cir.1983), and *Erie Resistor Corp. v. United States*, 299 F.2d 950, 156 Ct.Cl. 523, 132 USPQ 641 (1962), claiming that they are analogous on the facts to this case, and that they both indicate that in this case the prejudice required in *Howey* has been shown.[4] In *Evans* the defend-

---

**3.** Although it was not argued, this case is one falling squarely within *Foman's* exception that amendments should be freely granted unless there is a "repeated failure to cure deficiencies by amendments previously allowed." Here Goehring made numerous pre-trial amendments and failed to include the misuse or antitrust issues, even though the record is clear that Goehring was aware of the evidence underlying the issue years before the trial.

**4.** In *Erie Resistor,* the United States Court of Claims was presented with a motion by the defendant for leave to amend its pleadings in an infringement suit to include the defense of patent misuse. *Erie Resistor,* 299 F.2d at 951, 132 USPQ at 642. This motion was made after the court had rendered judgment on validity and infringement, and had remanded the case for an accounting. The court took note of the fact that 5 years before the motion was made, when

ant's answer was filed on July 3, 1979. The defense of res judicata became available and known to defendant in November 1979. A motion to amend to include the defense was not made until August 24, 1982, "after two pre-trial conferences, and only six days before the scheduled trial date." *Evans*, 704 F.2d at 47. The Second Circuit concluded that "[u]nder these circumstances, in order to justify the amendment, defendant had the burden of showing a compelling reason for the delay." The court then held that the defendant's reason, that it did not know that it could raise the issue until a Supreme Court decision so held, in a decision issued just before time for trial, was insufficient because there was sufficient existing law within the circuit to indicate that the issue could probably be raised. *Evans* cited a similar case, *Nevels v. Ford Motor Co.*, 439 F.2d 251, 257 (5th Cir.1971), in which the Fifth Circuit stated that "amendments should be tendered no later than the time of pretrial, unless compelling reasons why this could not have been done are presented."

Both *Evans* and *Nevels* required a showing of "compelling reasons" before allowing an amendment offered after pretrial. Here the case for requiring Goehring to show compelling reasons why leave to amend could not have been requested earlier is even stronger because the motion was not filed until 7 months after a jury verdict on validity and infringement, and 5 weeks after the denial of Goehring's motions for directed verdict, judgment n.o.v., and new trial.

Further evidence of prejudice is the self-evidence fact of the costs involved in having a trial, jury or otherwise, on the issues of antitrust and misuse added by amendment. Both the *Evans* court and the *Nevel* court found sufficient prejudice in the unfair surprise created by the undue delay in raising the issue immediately before trial was to begin. Surely it is more prejudicial to raise the issue after the trial is over.[5]

I would therefore find that the unavailability of witnesses, coupled with the unconscionable surprise caused by Goehring's delay would at a minimum, even under Ninth Circuit law, shift the burden to Goehring to explain its delay. An explanation is, of course, what Goehring has been wholly unable to offer in the appeal.[6]

Goehring claimed at oral argument that its delay in raising the patent misuse and antitrust issues was due to the fact that it had no knowledge of those issues until plaintiff's witness made them aware of it by testimony at trial. However, a review of the key question asked by Goehring's counsel at trial indicates that the answer they claim first apprised them of the misuse and antitrust issues came as no surprise.

> QUESTION Mr. Townsend [Goehring's attorney]: The testimony has been, *and your brother's I believe was the same* [in Salvatore LoBiondo's February 1980 deposition], that you leased the machine and at the same time, according to your testimony, you granted a license to the user of that machine to practice the process;

the validity and infringement issues were pending before the trial commissioner, the defendant had made the statement in discovery that patent misuse is an issue bearing directly on validity. The court decided that this statement was evidence showing that the defendant had been afforded ample opportunity to raise the defense and held that it could not be raised after judgment had been rendered on validity and infringement.

5. I would see some merit in analogizing to the finding of prejudice in laches cases where the rule is also that delay alone ordinarily cannot create prejudice. In those cases, the courts have said however:

> " 'The longer the delay by a plaintiff in filing suit, the less need there is to search for specific prejudice and the greater the shift to plaintiff of demonstrating

lack of prejudice.' " *Deering v. United States*, 620 F.2d 242, 246, 223 Ct.Cl. 342 (1980). If a plaintiff fails to meet this burden in a meaningful way, it may be presumed, in a proper case, that prejudice is manifest from undue delay. *Wilmot v. United States*, 205 Ct.Cl. 666, 685 (1974). *Pepper v. United States*, 794 F.2d 1571 (Fed.Cir. 1986). *See also Leinoff v. Milona & Sons*, 726 F.2d 734, 742 (Fed.Cir.1984).

6. Perhaps the only plausible explanation was offered by the district court when it said at the hearing on the motion for leave to amend: "If the test is where [has Goehring] been for the last 9 months, the answer would be they are sticking their finger in their ear and they ought to be denied."

is that your testimony? (Emphasis added.)

A. (Joseph LoBiondo): Not in those exact words, but we never let one out without the other.

The bracketed material included in the quote above was supplied by Senza-Gel in its brief. The insertion was not disputed by Goehring in briefs or at oral argument. In argument, Goehring's statement was that this response by Joseph LoBiondo was different from Salvatore LoBiondo's statement in a February 1980 deposition:

I lease my process and loan the machine. That is our operation.

I fail to see any meaningful difference in the two responses. But my analysis of Goehring's "new evidence" claim does not stop here. Goehring obtained one of the licenses, now challenged as illegal, from Senza-Gel in March 1976, almost 8 years before the trial. Thus, Goehring was on notice of Senza-Gel's manner of doing business long before the trial. The record simply lends no support to Goehring's claim that it was not aware of the misuse and antitrust issues until the testimony surfaced at trial. I note further that *even accepting this claim*, Goehring has made no attempt to explain in the briefs or in oral argument why it waited so many months to raise these issues when it could have raised them in a trial amendment under Rule 15(b), or at the least mentioned them in the motions for directed verdict, judgment n.o.v., or new trial.

Finally, I turn next to Goehring's principal attempt at justifying its late amendment. Goehring states the following in its brief.

The course of proceedings also included the court's Status Conference Order of July 1, 1982 (SX 1), wherein the court bifurcated the parties' claims for trial and stated:

"The court hereby severs the claims of patent validity and infringement from all other claims in this matter. The issues of patent validity and infringement shall be tried *before all other issues*." (Emphasis supplied by Goehring.)

From this, Goehring concludes:

Accordingly, only the defenses of invalidity and noninfringement were triable at the January, 1984, trial and not patent misuse, among others.

I cannot agree with Goehring's conclusion that a bifurcation of issues, and a trial on only the issues of validity and infringement precludes the raising of a defense of patent misuse. First and foremost, even if Goehring would have been prevented under the order from *trying* the misuse issue, he has offered no reason, and indeed there can be none, why he did not at least amend his pleadings to include the issue. Such an amendment would have apprised the court of a newly raised issue which it might have wanted tried with the validity and infringement issues. It certainly would have been more in line with the general bias of the federal rules against "surprise" practice. Except for the fact that the majority bought it, Goehring's argument that the district court's order postponing trial of "all other issues" somehow applied to prevent the trial or even the raising of an issue not even in the case at the time the order issued would seem ludicrous.

Goehring asserted at oral argument that patent misuse goes to the enforceability of the patent, and not the validity. It reasons from this that it could not have raised the issue in a trial limited solely to the issues of validity and infringement. This view ignores the patent statute itself, and in particular 35 U.S.C. § 282 (1982), which states in part:

The following shall be defenses in any action involving the validity or infringement of a patent and shall be pleaded:

(1) Noninfringement, absence of liability for infringement *or unenforceability.* (Emphasis added.)

Chief Judge Markey has stated that "[t]he doctrine of patent misuse is an affirmative defense to a suit for patent infringement." *Windsurfing International, Inc. v. AFM, Inc.,* 782 F.2d 995, 1001, 228 USPQ 562, 566 (Fed.Cir.1986), *cert. denied,* — U.S. —, 106 S.Ct. 3275, 91 L.Ed.2d 565 (1986) (citing *Bio-Rad Laboratories, Inc. v. Nicolet Instrument Corp.,* 739 F.2d 604, 617, 222

USPQ 654 (Fed.Cir.), *cert. denied,* 469 U.S. 1038, 105 S.Ct. 516, 83 L.Ed.2d 405 (1984)). The *Erie Resistor* court stated that the issue of patent misuse "goes to the question of the right to recover, and not to the question of the amount of recovery." *Erie Resistor,* 299 F.2d at 951–52, 132 USPQ at 642.

These references should have been sufficient to put Goehring on notice that patent misuse was to be raised prior to the trial on validity and infringement. Goehring has not claimed here that it attempted to include consideration of the patent misuse issue at trial and that the district court prevented it from doing so. Here the statute and our pronouncements on the issue were sufficiently clear to put Goehring on notice that patent misuse was an issue to be raised in a trial on validity and infringement. The state of the law is much clearer here than it was in *Evans,* where that court quoted *Strauss v. Douglas Aircraft Co.,* 404 F.2d 1152, 1155 (2d Cir.1968):

> [T]he party wishing to raise the defense (of res judicata) is obliged to plead it at the earliest possible moment. Certainty of success is not an essential element in determining whether to set forth the affirmative defense in a pleading. If the defense lurks in the case, vacillation can cause the other party irreparable injury.

*Evans,* 704 F.2d at 47.

Goehring also claims justification for its delay in that the amended pleading was relevant to its pending Lanham Act counterclaim, and that the antitrust counterclaim might be compulsory. Both of these may be justification for amending the pleadings, but neither supplies justification for the late date at which the amendment was offered. Nothing in these two justifications explains why the amendment could not have been timely made before trial. For the same reason, I reject Goehring's attempt to justify its late filing by reasoning that the public policy against misuse of patents will otherwise be harmed. This was as true before the start of the trial as it was after.

For the reasons discussed above, I am convinced that at the time the motion for leave to amend was filed, Senza-Gel would necessarily have been prejudiced by the granting of the motion, and that Goehring failed to show at that time and on appeal any compelling reason justifying an amendment to assert new issues 7 months after the jury trial on validity and infringement. Accordingly, I would reverse the grant of that motion because the issues were waived under the circumstances described in this case, and the district court abused its discretion when it granted the motion to amend. This would preclude Goehring from raising the issues of patent misuse and antitrust violations in the trial of this case, and my disposition would render moot Goehring's appeal from the denial of summary judgment on the antitrust issue. I would also vacate the district court's summary judgment on patent misuse which arose from the improvident grant of the motion to amend. I would accordingly direct that the proceedings be taken up again from the state they were in prior to the granting of the motion for leave to amend on December 5, 1984. I do not reach the res judicata issue nor issues certified to us, as my disposition would render them moot in this case.