Jerome H. LEMELSON, Plaintiff,

v.

**IDEAL TOY CORPORATION, Defendant.**

No. 68 Civ. 1286.

United States District Court
S. D. New York.

July 12, 1968.

Arthur T. Fattibene, New York City, for plaintiff by Francis Thomas Daley, Stratford, Conn., of counsel.

Amster & Rothstein, New York City, for defendant by Morton Amster and James Reisman, New York City, of counsel.

POLLACK, District Judge.

The defendant, sued herein for patent infringement and for breach of an exclusive licensing agreement under the same patent, moves for summary judgment of dismissal of this suit pursuant to Rule 56 F.R.Civ.P. and for counsel fees under 35 U.S.C. § 285, on the ground that the suit is frivolous and poses no genuine issue of material fact.

The plaintiff is the owner of U. S. Patent No. 2,939,707 issued to him on application No. 485,041, effective June 30, 1960. The parties entered into an exclusive license to the defendant under this patent in 1960. This licensing agreement was made while application No. 485,041 was pending and in anticipation of the issuance of patent No. 2,939,707. The defendant, a toy manufacturer, is manufacturing and selling two toys which plaintiff alleges are covered by the patent claims. The relief which plaintiff seeks is damages for patent infringement by the defendant's sale of its toy called the Elephant Ring Toss and royalty payments claimed to have been agreed on in the licensing agreement on the sales of the defendant's toy called the Water Basketball Game.

Defendant contends that the license agreement operates by its terms and implications as a complete defense to the plaintiff's suit. The defendant asserts that the Elephant Ring Toss is mentioned in and expressly excluded from royalty obligation by the license; and defendant asserts that the definition of the toys subject to royalty was so drawn as to exclude by necessary implication any royal-

ty obligation on sales of the Water Basketball Game.

The rules for decision of this controversy are clear. The existence of a patent license is a complete defense in a suit for infringement. Western Electric Co. v. Pacent Reproducer Corp., 42 F.2d 116 (2d Cir.), cert. den., 282 U.S. 873, 51 S.Ct. 78, 75 L.Ed. 771 (1930); DeForest Radio Telephone Co. v. United States, 273 U.S. 236, 47 S.Ct. 366, 71 L. Ed. 625 (1927). Where the Court's construction of a patent license agreement disposes of the plaintiff's claim, summary judgment is the proper remedy. New Wrinkle, Inc. v. John L. Armitage & Co., 238 F.2d 753 (3d Cir. 1956); See, also Automatic Radio Mfg. Co. v. Hazeltine Research, Inc., 339 U.S. 827, 70 S.Ct. 894, 94 L.Ed. 1312 (1950). " * * * [W]hen * * * an affirmative defense is legally sufficient, the defendant is entitled to summary judgment." 6 Moore's Federal Practice (1966 ed.) ¶ 56.17 [11] at 2512.

The statements required by Rule 9(g) of the General Rules of this Court on a motion for summary judgment pursuant to Rule 56 of the Rules of Civil Procedure reveal the following factual background.

Some time prior to April 29, 1960, the plaintiff Lemelson made confidential disclosures of certain inventive ideas relating to toys and novelty devices to the defendant Ideal Toy Corporation (hereafter Ideal). A dispute arose about Ideal's obligation to compensate Lemelson for these disclosures and as a result a civil action was brought thereon by Lemelson in this Court on or about January 29, 1958. That action was settled by the execution of a settlement agreement on April 29, 1960. The settlement provided for two license agreements which were duly made; only one of the licenses is involved in the present controversy.

Attached to the settlement agreement was a letter of January 13, 1953 acknowledging an agreement between the parties in relation to two toys that Lemelson had submitted to Ideal, one of which was an inflatable toy mounted on a base so that it might be used as a pull toy or as a mechanical toy; and the other was an inflatable target game which was constructed of a plastic. The items so submitted had been accepted by Ideal for the purpose of manufacture and sale to the world. Ideal agreed to pay Lemelson a 5% royalty based on the sale price of these items, to commence with the first of January, 1953.

The agreement of settlement of the 1958 law suit provided that in consideration of the payment by Ideal to Lemelson of $15,500 and the rewriting and clarification of the 1953 understanding, Lemelson released Ideal from all claims for breach of confidential disclosure or unjust infringement which he might have against Ideal. It was further understood that the $15,500 so paid would represent full payment for any and all confidential disclosures theretofore presented by Lemelson to Ideal and Lemelson agreed to make no further claim thereafter against Ideal for use, past, present or future of such confidential disclosures in any manner whatsoever. Lemelson further released Ideal from any claims for infringement of any patent then or thereafter issued as to the items referred to in the law suit "with the exception of pending application Serial No. 485,041 filed January 31, 1955, PLASTIC TOY", and another patent application not here material.

The settlement agreement further provided that the substance of the contract of January 13, 1953 should be recast into two separate licenses, one for each of the described toys. The license with which we are here concerned was annexed as Exhibit D to the settlement agreement.

Exhibit D is entitled "LICENSE AGREEMENT" and was entered into on April 29, 1960 by the parties hereto. It recites history; that Ideal is licensed by Lemelson to manufacture inflatable toys pursuant to their letter agreement of January 13, 1953 and that both parties are desirous of further clarifying and defining their respective rights and obligations "under said letter agreement".

Paragraph "1" of Exhibit D revokes the letter agreement of January 13, 1953 which is replaced in its entirety by the new license agreement. Paragraph "2" of Exhibit D contains a grant from Lemelson to Ideal of an exclusive license to make, use and sell throughout the world the items known as "Inflatable Target Toys" for the term and under the conditions set forth in such license. The toys intended to be included in the agreement are defined therein as inflatable target toys mounted on a base capable of being knocked over by an object, such as a ball, thrown through the air at such targets. Lemelson acknowledged in the agreement that he had not made any confidential disclosures to Ideal of any toys being made at that time by Ideal, which came within the scope or intent of the said definition or within the scope of the license agreement "including without limitation the Elephant Ring Toss Game No. 5220" and other games specifically also mentioned in the agreement. Ideal agreed to pay a 5% royalty on its sales of the defined items and the method of accounting therefor is set forth.

In paragraph "7" of Exhibit D, Lemelson warranted that a Patent Application Serial No. 485,041, filed January 31, 1955 entitled PLASTIC TOYS was pending before the Patent Office "and in the event that a patent is granted * * * then Ideal shall receive an exclusive license under said patent * * * without any further payments other than those provided for hereunder, and under the same terms and conditions as set forth herein."

The license agreement states that it encompasses the entire understanding between the parties and that no change, modification or waiver of any of the provisions thereof should be valid unless made in writing and signed by the parties.

U. S. Patent No. 2,939,707, based on Application Serial No. 485,041, issued on June 7, 1960. It is alleged by the plaintiff that the patent contains at least one claim covering the Elephant Ring Toss Game and the Water Basketball Game. The defendant claims that it is exclusively licensed under the patent to make and sell its Elephant Ring Toss Game by paragraph "7" of Exhibit D, but plaintiff controverts this contention and claims that Ideal has no license to make, use or sell that game. It is deemed admitted hereon by force of Rule 9(g) of the General Rules of this Court that defendant is exclusively licensed under the patent with respect to its Water Basketball Game pursuant to paragraph "7" of Exhibit D.

## ELEPHANT RING TOSS GAME

The license agreement thus contains two clauses which are, without reference to facts dehors the contract, irreconcilable: In paragraph "2" the parties agree that the Elephant Ring Toss Game does not " * * * come within the scope or intent of * * * this agreement."

In paragraph "7", however, the plaintiff grants to the defendant an exclusive license under patents issuing from Patent Application No. 485,041; and U. S. Patent No. 2,939,707 subsequently issued therefrom and plaintiff alleges that a claim therein encompasses the Elephant Ring Toss Game.

The plaintiff contends that paragraph "2" controls and carves out of the patent license agreement the Elephant Ring Toss Game, with the effect that there exists no agreement between the parties with respect to that game.

The defendant asserts that paragraph "2" operates to remove the Elephant Ring Toss Game from the scope of the royalty agreement contained in paragraphs "1" through "6" with respect to "inflatable target toys," because it is not such a toy; but that the grant of the exclusive patent license in paragraph "7" does include the Elephant Ring Toss Game.

In short, the defendant contends that Ideal is the exclusive licensee under the licensed patent, with its royalty burden as licensee being measured by the definition viz., inflatable target toys, and this operates to preclude the payment of

royalties under that license on the Elephant Ring Toss Game.

It is possible to read the agreement as the defendant contends, and such a reading may be compelled upon the presentation of evidence extrinsic thereto. Thus, it is possible that paragraph "2" merely identifies the subject of the confidences imparted in 1953 which did not include the Elephant Ring Toss Game; it is likely that the defendant desired to put to rest all claims between the parties then known to exist; it is probable that defendant would not have wished to exclude from license under a prospective patent a toy which it was known by plaintiff to be manufacturing at the time of the agreement. It is possible that the parties considered the payment of $15,500 under the settlement agreement executed contemporaneously with the license agreement and the specified coverage of the royalty agreement, i. e., inflatable target toys, to be sufficient consideration for past and future use of all toys which the plaintiff claimed to have disclosed in confidence to the defendant and which were embraced in the claims of the prospective patent.

On the other hand, such intent as imputed to the parties by the defendant, does not appear unambiguously on the face of the license agreement. It is plausible that the plaintiff did not wish to be bound by a license agreement before he knew precisely which claims would be allowed by the Patent Office so that he could tell which toys manufactured by the defendant were encompassed within the patent. It is conceivable, even if dubious, that the parties contemplated a separate license agreement with respect to toys excluded from paragraph "2" of the 1960 agreement. In this connection it may be noted that infringement of the anticipated patent was expressly excepted from the terms of the settlement agreement [para. 2(b)] albeit that the license given in paragraph "7" of the License Agreement is all-inclusive. There could be no possibility of an infringement on the patent if indeed the Elephant Ring Toss Game was considered to be or become licensed under the patent.

Such speculation is, of course, out of place on a motion for summary judgment. It touches on issues which will be illumined only by the presentation of evidence and it bespeaks the existence of a material issue of fact, as to the intent of the parties in respect of the ambiguity. Where such intent cannot clearly be determined from the face of the agreement, recourse to extrinsic evidence is permitted; indeed such recourse is required, as is a denial of defendant's motion with respect to Count I of the complaint.

WATER BASKETBALL GAME

The Water Basketball Game is not excluded from the scope of the license agreement, Exhibit D. Both parties recognize that the defendant is the exclusive licensee under plaintiff's Patent No. 2,939,707 to manufacture and sell the Water Basketball Game. The sole question is whether the defendant is obligated to pay the plaintiff royalties thereon.

The defendant contends that the entire scope of its obligation to pay royalties under the 1960 license agreement is contained in the first six paragraphs of that agreement, that such obligation is limited to the "inflatable target toys" defined therein, and that the Water Basketball Game does not come within the scope of the said definition.

In paragraph "3" of Exhibit D, the defendant agreed to pay the plaintiff 5% royalty on all "inflatable target toys" shipped by the defendant. "Inflatable target toys intended to be included in this agreement are defined as inflatable target toys including a base," etc. The definition concededly does not include the Water Basketball Game. No other items or class of items are mentioned in the license agreement as being subject to royalties, and toys within the scope of the patent license are subjected to no "further payments other than those provided for hereunder. * * * "

On its face, the agreement purports to limit payment of royalties to "inflatable target toys" as defined therein, even though other toys are included within the scope of the applied-for patent and within the scope of the agreement. While reasons are suggested in the papers why the plaintiff would not have agreed to give the defendant a free license with respect to an unknown number of toys encompassed by the patent, this Court is precluded in interpreting an unambiguous portion of a contract from inquiring into the psychological motivation of the parties.

Accordingly, defendant is granted summary judgment on Count II of the complaint. The Court expressly determines that there is no just reason for delay and that judgment be entered in favor of defendant and against plaintiff on Count II pursuant to Rule 54(b) F.R. Civ.P. No costs.

So ordered.