RACEWAY COMPONENTS,
INC., Plaintiff,

v.

BUTLER MANUFACTURING
COMPANY, Defendant.

Civ. A. No. 83–A147.

United States District Court,
S.D. West Virginia,
Parkersburg Division.

Feb. 27, 1989.

---

Edward G. Atkins, Charleston, W.Va., Howad N. Sommers, I. Morley Drucker, Beverly Hills, Cal., for plaintiff.

Frederick J. Olsson, Wayne, Pa., Daniel A. Ruley, Jr., Ruley & Everett, Parkersburg, W.Va., John J. Held, Robert C. Ryan, Gregory J. Vogler, McAndrews, Held & Malloy, Chicago, Ill., for defendant.

1. U.S. Patent No. 3,995,102.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending before the Court is Defendant's motion to amend its answer to plead the affirmative defense of license to Plaintiff's patent infringement claim. The parties have submitted memoranda in support of their respective positions and the matter is mature for the Court's consideration.

Considering the nature of Defendant's motion, the Court believes that a brief procedural history is necessary to place Defendant's motion in proper perspective.

On November 15, 1983, Plaintiff filed the complaint in this action alleging, *inter alia,* that its patent (hereinafter '102 patent)[1] had been infringed by the Butler Series 1400 poke-thrus. Plaintiff also served upon Defendant, along with its complaint, "Plaintiff's First Set of Interrogatories" and "Plaintiff's First Request for Production." The November 15, 1983, date thus serves as the genesis for what the Court characterizes as a thorough, long, intensive, and arduous legal battle. The parties, however, were not unfamiliar with the federal court system. Prior to this litigation there was another action involving the parties relating to infringement of the '102 patent by the Series 1300 poke-thrus. The prior action reached resolution on June 28, 1982, when a license agreement was entered between the parties in settlement of the action. It is the June 28, 1982, license which the Defendant now wishes to include in its pleadings alleging that the Butler Series 1400 poke-thrus fall within the provisions of the 1982 license agreement.

As mentioned before, the parties have been involved in intensive litigation before this Court for over five years. The parties engaged in active, intense and comprehensive discovery from November 15, 1983, through January 14, 1986, including interrogatories, requests for productions of documents, depositions, and numerous motions relating to such discovery.

After the close of discovery Defendant filed four separate summary judgment mo-

tions between March 3, 1986, and March 17, 1986. Each of Defendant's motions received extensive and comprehensive briefing from the parties in support of their respective positions. On April 9, 1987, the Court denied Defendant's summary judgment motions and rescheduled several pretrial matters so that the action could proceed to trial expeditiously. This case was placed on inactive status from April 22, 1987, through November 12, 1987, due to an illness of defense counsel. Once the case was returned to active status, the case was again scheduled on the Court's trial docket.

On March 10, 1988, a telephonic pretrial conference was conducted wherein the parties discussed with the Court the extensive consolidated pretrial order the parties were to submit and the extensive proposed findings of fact and conclusions of law previously submitted. During the pretrial conference, the parties proposed that the trial of this action be bifurcated as to liability and damages. The Court approved the parties' proposal.

After a final settlement conference on March 28, 1988, the liability trial was conducted from March 29 through March 31, 1988. At the conclusion of the trial, the Court announced its decision that the Plaintiff's patent was valid and infringed. Accordingly, the Court found for the Plaintiff on the issue of liability. The Court recessed pending a hearing on the damage issue, in the event the parties were unable to agree. On April 8, 1988, the Court issued a Memorandum Opinion and Order to supplement its earlier ruling delivered from the bench.

At no time throughout any of the aforementioned stages of this intense five-year litigation did the Defendant once assert license as an affirmative defense to Plaintiff's patent infringement claim. Nor was the issue of license raised in any of the numerous motions filed by the Defendant or any memoranda submitted in support thereof.

Subsequent to the Court's ruling on the issue of liability, the parties were unable to resolve their differences with respect to the appropriate measure of damages. Accordingly, the Court entered an abbreviated Time Frame Order on September 30, 1988, scheduling trial on the issue of damages for February 28, 1989.[2] Prior to this Order, Defendant apparently sought additional counsel to aid in its representation in the damage phase of the litigation. On September 7, 1988, Robert C. Ryan and John J. Held from the Chicago law firm of McAndrews, Held and Malloy, Ltd., filed their statement of nonresident attorney with the Court.[3] Approximately one week prior to this filing, the Defendant tendered a check to Plaintiff for payment of royalties plus interest for the Series 1400 poke-thrus. In the letter accompanying the check Defendant asserts for the first time that the June 20, 1982, license, in view of the Court's decision, covers the Series 1400 poke-thrus. Plaintiff returned the check and rejected the offered payment asserting that the Series 1400 poke-thrus are not licensed products. On October 4, 1988, the Defendant filed the motion in issue herein.

In its motion, Defendant argues that the proposed amendment, including license as an affirmative defense, is seasonable and only necessary now that the Court has held that Plaintiff's patent is valid and that the Series 1400 poke-thrus are within the scope of the '102 patent. The Defendant further contends that the amendment sought solely affects the damages and injunction issues still pending before the Court. Finally, Defendant asserts that it is entitled, via alternative pleading, to contest both the validity of the patent in issue and whether the Series 1400 poke-thrus are licensed products under the 1982 agreement.

■ With regard to the final argument proffered by Defendant, the Court agrees that a patent licensee has the right, by virtue of *Rule* 8(e)(2) of the Federal Rules of Civil Procedure and existing case law, to

---

2. The damage trial was continued to March 28, 1989, by Order entered October 31, 1988.

3. Gregory J. Vogler from the same law firm filed his statement of nonresident attorney on September 14, 1988.

challenge both the validity of a licensed patent and whether the product in issue is a licensed product. The Court in *Lear, Inc. v. Adkins,* 395 U.S. 653, 89 S.Ct. 1902, 23 L.Ed.2d 610 (1969) explained

> "On the one hand, the law of contracts forbids a purchaser to repudiate his promises simply because he later becomes dissatisfied with the bargain he has made. On the other hand, federal law requires that all ideas in general circulation be dedicated to the common good unless they are protected by a valid patent.

> \*  \*  \*  \*  \*  \*

> Surely the equities of the licensor do not weigh very heavily when they are balanced against the important public interest in permitting full and free competition in the use of ideas which are in reality a part of the public domain. Licensees may often be the only individuals with enough economic incentive to challenge the patentability of an inventor's discovery. If they are muzzled, the public may continually be required to pay tribute to would-be monopolists without need or justification. We think it plain that the technical requirements of contract doctrine must give way before the demands of the public interest in the typical situation involving the negotiation of a license after a patent has issued."

*Id.* at 668, 670–71, 89 S.Ct. at 1910, 1911–12.

The Defendant's right to defend on alternative theories, however, must be considered in conjunction with the pleading requirements of *Rule* 8(c) of the Federal Rules of Civil Procedure and 35 U.S.C. § 282. *Rule* 8(c) specifically identifies license as an affirmative defense which must be specifically asserted in responsive pleadings or is deemed to be waived. *Jones v. Miles,* 656 F.2d 103 (11th Cir. 1981).[4] Additionally the fact that license must be pled as an affirmative defense in patent cases is made clear by 35 U.S.C. § 282(1), which provides:

> "The following shall be defenses in any action involving the validity or infringement of a patent and shall be pleaded: (1) ... absence of liability for infringement...."

In the present case the Defendant first mentioned the affirmative defense of license more than five years after this intense litigation began, and nearly six months after the Court ruled for the Plaintiff on the issue of liability. Additionally, the Defendant was aware of the 1982 agreement for a period in excess of six years prior to the date its motion for leave to amend was filed. Given these circumstances, Defendant argues that justice requires the liberal provisions of *Rule* 15(a) be adhered to in allowing it to amend its pleadings to assert license as an affirmative defense. For the following reasons, the Court denies Defendant's motion.

■ *Rule* 15(a) of the Federal Rules of Civil Procedure provides in relevant part that "a party may amend his pleadings only after leave of the court" and that leave "shall be freely given when justice so requires." The decision to grant or deny leave to amend, however, is vested in the discretion of the trial judge who is familiar with the history of the proceedings and with the circumstances surrounding the party's motion. *See, e.g., Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 330, 91 S.Ct. 795, 802, 28 L.Ed.2d 77 (1977). Proper grounds for denying a party's motion to amend are that the amendment would result in delay or undue prejudice to the opposing party, or that a party's delay in filing a motion is accompanied by prejudice, bad faith or futility. *Island Creek Coal Co. v. Lake Shore, Inc.,* 832 F.2d 274, 279 (4th Cir.1987); *Sweetheart Plastics, Inc. v. Detroit Forming, Inc.,* 743 F.2d 1039, 1043 n. 2 (4th Cir.1984); *Woodson v. Fulton,* 614 F.2d 940 (4th Cir.1980).

---

**4.** *Rule* 8(c) of the Federal Rules of Civil Procedure provides:

"(c) Affirmative Defenses. In pleading to a preceding pleading, a party shall set forth affirmatively ... license ... and any other matter constituting an avoidance or affirmative defense...."

In the present case, Defendant argues that *Senza Gel Corp. v. Steiffhart*, 803 F.2d 661 (Fed.Cir.1986) controls disposition of its motion. In *Senza Gel* the plaintiff filed actions against all of the defendants asserting numerous claims under both state and federal law. Included in the plaintiff's complaint was the allegation that the defendants had infringed its patent. The trial court decided to first conduct a jury trial on the issues of patent validity and infringement before proceeding to trial on the other issues raised in the parties' pleadings. After the initial trial, the jury returned a verdict that the plaintiff's patent was valid and infringed. Several months after the jury trial, and before trial on the remaining issues, the defendants moved to amend their pleadings to assert the affirmative defense of patent misuse. The trial court granted defendants leave to amend their pleadings and subsequently granted defendants' motion for summary judgment on the patent misuse issue. *Id.* at 662, 663.

The plaintiff argued that the trial court abused its discretion in granting the defendants' motion to amend because patent misuse was an affirmative defense which the defendants waived when they failed to assert the defense in their pleadings and failed to offer evidence in support of the defense at the trial concerning patent validity and infringement. The Federal Circuit upheld the trial court's decision, concluding (1) that the jury verdict that the patent was valid and infringed was not inconsistent or preempted by the court's subsequent ruling in favor of the defendants on patent misuse issue; and (2) that the plaintiff failed to establish that it had been prejudiced by the trial court's granting defendants' motion to amend. *Id.* at 666. In elaborating on its second conclusion, the court stated that the

burden is with the nonmovant to show why the amendment should not be granted. *Id.*

As an initial matter the Court notes that it is not bound by the Federal Circuit's decision in *Senza Gel* because the issue in hand concerns procedural matters not unique to patent law. *Id.* Therefore, Fourth Circuit law controls the resolution of the Defendant's motion to amend. *Panduit Corp. v. Allstates Plastic Mfg. Co.*, 744 F.2d 1564, 1574, 1575 (Fed.Cir.1984). Additionally, the Court notes that the Fourth Circuit has not gone so far as to shift the burden to the nonmovant to show why the amendment should not be granted. Although it has stated that the trial court should focus "on prejudice or futility or bad faith as the only legitimate concerns in denying leave to amend, since only these issues truly relate to protection of the judicial system or other litigants." *Davis v. Piper Aircraft Corp.*, 615 F.2d 606 (4th Cir.1980).

The facts in the present case differ significantly from *Senza Gel* in that the Court agreed only to bifurcate the trial as to the issues of liability and damages. The Court did not approve, nor did Defendant propose, a separate trial on patent validity and infringement prior to the Court's ruling on the issue of liability. Rather it was the understanding of the parties and the Court that the scope of the initial trial was the issue of liability.[5] The parties had four and one-half years to thoroughly consider their trial strategies. Further, counsel were given ample opportunity to raise all claims and defenses affecting liability during trial. When the Court issued its Memorandum Opinion and Order on April 8, 1988, the liability phase of this action concluded. Thus, the Court's Memorandum Opinion and Order significantly reduced the remain-

---

5. The Court's Memorandum Opinion and Order and subsequent Time Frame Order reflect the Court's intention that the liability portion of this case was concluded.

"The trial of this action having been bifurcated as to liability and damages, the Court will enter a final, appealable judgment order upon determination of the amount of damages to be awarded to Plaintiff."

Memorandum Opinion and Order, p. 12, April 8, 1988.

The Time Frame Order entered on September 30, 1988, states "The Court imposes the following Time Frame Order, which scope is limited solely to the issues of damages."

ing issues in dispute.[6]

■ The Defendant's failure to plead or offer any evidence in support of the license defense at the liability trial constitutes a waiver of the same. To hold otherwise would run counter to the finality attaching to trials. *Windsurfing International, Inc. v. AMF, Inc.*, 782 F.2d 995 (Fed.Cir. 1986).

■ The Court is further reluctant to grant Defendant's motion because in this case, unlike *Senza Gel*, allowing Defendant to amend would require the Court to re-open and for the parties to relitigate the issue of liability. Although the Court based its liability decision on the validity of the patent and infringement, it extended its ruling to apply to liability because the Defendant failed to assert or establish any defense which would absolve it from liability. The Court rejects Defendant's argument that the affirmative defense of license affects only the issues of damages and injunction. It is well settled in the area of patent law that a valid license to make, use or sell a product is a complete defense to an infringement action. *Anthony Co. v. Perfection Steel Body Co.*, 315 F.2d 138 (6th Cir.1963); *Talbot v. Quaker State Oil Refining Co.*, 104 F.2d 967 (3d Cir.1939); *Morris v. Texas Working Barrel Mfg. Co.*, 13 F.2d 977 (5th Cir.1926); *Sims v. Mack Trucks, Inc.*, 459 F.Supp. 1198 (E.D.Pa.1978); *Levin v. Ripple Twist Mills, Inc.*, 416 F.Supp. 876 (E.D.Pa.1976); *Lemelson v. Ideal Toy Corp.*, 286 F.Supp. 993 (S.D.N.Y.1968). Thus, one who possesses a valid license is not *liable* for alleged patent infringement. A fair statement of the Defendant's argument is that Plaintiff is not entitled to damages in excess of the license royalty and that Plaintiff is not entitled to injunctive relief because the Defendant is *not liable* for patent infringement.

The Court's ruling on the issue of liability is analogous to its granting a motion for partial summary judgment on the issue of liability. In cases where courts have previously ruled on the merits of an issue, they have been reluctant to reopen the previously litigated matter. In *Freeman v. Continental Gin Co.*, 381 F.2d 459 (5th Cir. 1967), the court stated:

"A busy district court need not allow itself to be imposed upon by the presentation of theories seriatim. Liberty in amendments is important to assure a party a fair opportunity to present his claims and defenses, but 'equal attention should be given to the proposition that there must be an end finally to a particular litigation.'

\* \* \* \* \* \*

Much of the value of summary judgment procedure in cases in which it is appropriate ... would be dissipated if a party were free to rely on one theory in an attempt to defeat a motion for summary judgment and then, should that theory prove unsound, come back long thereafter and fight on the basis of some other theory."

*Id.* at 469, 470.

Additionally, the D.C. Circuit held that the trial court acted properly in denying a motion to amend when:

"[Plaintiff] attempted to raise an entirely new issue by amendment, years after it had filed its original complaint, after the parties had conducted extensive discovery, and after the district court had granted a summary judgment motion against the [plaintiff]. [Plaintiff] offered no explanation for its tardiness.... Under these circumstances, when so much time has passed and where the movant has had abundant opportunity over the course of a half a dozen years to raise the issue, the district court's denial of the motion for leave to amend was fully warranted."

*Williamsburg Wax Museum v. Historic Figures, Inc.*, 810 F.2d 243 (D.C.Cir.1987); *see also Doe v. McMillan*, 566 F.2d 713 (D.C.Cir.1977).

■ In the present case, the Defendant's original answer, filed January 16, 1984, was before the Court for nearly five years before the Defendant sought leave to

---

**6.** The parties acquiesced to the finality of the Court's ruling on the liability issue for over six months. It was after substitute counsel noted their appearance that the Defendant began its attempt to reopen the liability issue.

amend to add the defense of license. Further, the Defendant has been aware of the license agreement it entered with Plaintiff for over six years. Given these circumstances and the thoroughness of this litigation, the Court is not persuaded by Defendant's argument that its failure to plead the license defense constitutes understandable and harmless oversight. To the contrary, the Court agrees with Plaintiff that Defendant's action throughout this litigation is inconsistent with its newly asserted defense.[7] Furthermore, the timeliness of Defendant's motion to amend is suspect, inasmuch as the Court has already found for the Plaintiff on the issue of liability, thus entitling Plaintiff to compensatory damages and injunctive relief.

The Court further rejects Defendant's argument that it is only logical to address the license issue after the Court has ruled on the validity of the patent and infringement. Since the license defense goes directly to the issue of liability, the logical time to have raised such defense was at the liability stage of the trial. To have done so would simply have added a third prong to the Court's previous inquiry of: (1) whether the patent was valid; and (2) whether the product in issue was within the scope of the patent. If timely raised, the task imposed by the addition of the third inquiry could have been addressed early on summary judgment motion and, if necessary, at trial on liability. Nor would the fact that the Defendant would have employed alternative theories of defense be as confounding to a court as it might have been to a lay trier of fact.

The Court believes that had the license issue been properly presented before it at the liability trial, that substantial time, effort and money would have been saved by the litigants because the Court would have been in a posture to rule on *all* matters regarding liability as it was led to believe it had. The Defendant states that the additional amount of trial time necessary for it

to present the license issue is limited to an offer of the license agreement into evidence. The Defendant's prior failure to do so, however, has caused the parties to expend further time and effort in briefing their position on the Defendant's motion to amend. Furthermore, were the Court inclined to grant Defendant's motion and reopen the liability issue, the Plaintiff would likely be subjected to a request for the reopening of discovery, a fifth motion for summary judgment, a potential trial on the issue of license or attempted retrial of issues previously litigated, all in addition to the contemplated trial on the issue of damages. Thus, the Court finds and concludes that the amendment would result in undue delay in the final disposition of the case. Defendant's motion to amend is denied.

---

**7.** While the Court fully acknowledges Defendant's right to challenge both the validity of the patent and the scope of the license agreement, the Defendant took no action consistent with its license defense prior to the early September, 1988, mailing of the royalty check. Had the Defendant genuinely believed license was a valid defense, it likely would have insured itself against adverse judgment by paying the license royalties into an escrow account while challenging the validity of the patent.