GENERAL MILLS, INC., Plaintiff,

v.

HUNT–WESSON, INC., Defendant.

No. 3–95–98.

United States District Court,
D. Minnesota,
Third Division.

July 6, 1995.

Allison A. Johnson, Robins, Kaplan, Miller & Ciresi, Minneapolis, MN, and Steve Pokotilow, Stroock & Stroock & Lavan, New York City, for plaintiff.

David R. Fairbairn, Thomas J. Stueber, Kinney and Lange, Minneapolis, MN and Craig Summer, Pretty, Schroeder, Brueggemann & Clark, Los Angeles, CA, for defendant.

## ORDER

DAVIS, District Judge.

This matter is before the Court upon Defendant's objections to United States Magistrate Judge Mason's Report and Recommendation dated May 30, 1995.

Pursuant to statute, the Court has conducted a *de novo* review of the record. 28 U.S.C. § 636(b)(1); Local Rule 72.1(c). Based on that review and all the arguments of the parties, the Court ADOPTS the Report and Recommendation.

Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendant's motion for a Stay of these proceedings is DENIED;

2. Plaintiff's motion for Preliminary Injunction is GRANTED. Plaintiff General Mills, Inc. and Defendant Hunt–Wesson, Inc., and their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, are hereby restrained and enjoined from participating, or engaging in any way in the arbitration proceeding commenced by Hunt–Wesson against General Mills on April 21, 1995 before the American Arbitration Association, until further Order of this Court.

## REPORT AND RECOMMENDATION

MASON, United States Magistrate Judge.

This action for patent infringement was commenced on February 1, 1995. On February 27, 1995, Defendant filed its Answer, and a Counterclaim seeking a declaratory judgment that the patent is invalid, unenforceable, and not infringed. On March 3, 1995, Defendant filed a Motion for Summary Judgment of non-infringement. On April 21, 1995, Defendant filed a Demand for Arbitration with the American Arbitration Association.

This matter is before the Court on cross-motions concerning Defendant's Demand for Arbitration. Defendant moves to Stay proceedings in this action pending conclusion of proceedings on its Demand for Arbitration, pursuant to the provisions of the Federal Arbitration Act, 9 U.S.C. § 3 [Docket No. 13]; Plaintiff moves for a preliminary injunc-

tion enjoining Defendant from proceeding with the arbitration. [Docket No. 23].[1]

The Court, being duly advised in the premises, upon all of the Affidavits, Exhibits, files, records and proceedings herein, now makes and enters the following Findings of Fact and Report and Recommendation.

### FINDINGS OF FACT/REPORT

Plaintiff and Defendant are competitors in the sale of Microwave popcorn. Plaintiff sells microwave popcorn under the trademark POP SECRET®. Defendant sells microwave popcorn under the trademark ORVILLE REDENBACHER'S®, among others. The Complaint alleges that Defendant's microwave popcorn products infringe Plaintiff's U.S. Patent No. 4,267,420 (hereinafter the "patent in suit" or the "'420 patent").

Earlier litigation to which Defendant was a party ("The 1988 Litigation") involved allegations that Defendant's microwave popcorn products infringed what have been called the "Watkins patents," namely U.S. Patent Nos. 4,735,513 and 4,878,765.[2] These patents are owned by Golden Valley Microwave Foods, Inc. (Golden Valley). General Mills was a licensee under those patents, among others (Agreement, June 19, 1985—Summers Affidavit, Exhibit 5), and had agreed with Golden Valley that the latter would bring suit under those patents, and split the proceeds with General Mills. (Agreement, September 26, 1988—Summers Affidavit Exhibit 4). General Mills was not a party to the 1988 Litigation, and its '420 patent was not (and could not have been) in issue in the 1988 litigation.

The 1988 Litigation was ultimately resolved by three agreements entered into in 1991 ("The 1991 Agreements").[3] Defendant claims that the 1991 Agreements provided it

with an implied license under the patent in suit, and that the issue of whether it is entitled to that license must be decided by arbitration. Arbitration is provided for in the License Agreement and in the Settlement Agreement.

In 1982, Congress enacted provisions which allow parties to make the enforcement provisions of the Federal Arbitration Act applicable to contracts involving patents. 35 U.S.C. § 294. The Federal Arbitration Act provides that contracts by which parties agree to have their disputes resolved by arbitration are enforceable by the federal courts (9 U.S.C. § 2), and it establishes a procedure by which a party may obtain a stay of the litigation if the issue therein is referable to arbitration. 9 U.S.C. § 3. Parties may be compelled to arbitrate if there is an agreement to arbitrate, and if the issue in dispute is an issue which the parties agreed to arbitrate. 9 U.S.C. § 4. Disputes concerning arbitration are to be decided by the court "in the manner provided by law for the making and hearing of motions." 9 U.S.C. § 6. *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22, n. 26, 103 S.Ct. 927, 940, n. 26, 74 L.Ed.2d 765 (1983).

▪ The limited duty of the district court is to determine whether there is an agreement to arbitrate, and whether the issue is one which the parties agreed to arbitrate. *Houlihan v. Offerman & Co., Inc.*, 31 F.3d 692, 694 (8th Cir.1994); *Daisy Mfg. Co. v. NCR Corp.*, 29 F.3d 389, 392 (8th Cir.1994). *See also I.S. Joseph Co., Inc. v. Michigan Sugar Co.*, 803 F.2d 396, 399 (8th Cir.1986).

▪ It is the Court, and not the arbitrator, which decides the issue of arbitrability.

1. Plaintiff's Motion for a Temporary Restraining Order against having to respond to the arbitration proceedings was denied by Judge Michael J. Davis by Order dated May 12, 1995 for the reasons stated therein. Said Order referred Plaintiff's Motion for a preliminary injunction to this Court for a Report and Recommendation and hearing concurrent with Defendant's Motion to Stay.

2. The litigation was captioned *Golden Valley Microwave Foods, Inc. v. Weaver Popcorn Company, Beatrice/Hunt/Wesson, Inc. and American Packaging Corporation.*

3. Copies of the 1991 Agreements were attached to the Affidavit of Craig S. Summers as follows: Exhibit 7—*Settlement Agreement* between Golden Valley and Hunt–Wesson; Exhibit 8—*Adoption Agreement* and Mutual Release among Golden Valley, General Mills and Hunt–Wesson; Exhibit 6—*License Agreement* from Golden Valley Microwave Foods, Inc. and General Mills, Inc. to Hunt–Wesson, Inc. Although not a party to the Settlement Agreement, General Mills is bound by its terms by reason of the provisions of the Adoption Agreement.

*AT & T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 648–649, 106 S.Ct. 1415, 1418–1419, 89 L.Ed.2d 648 (1986); *International Union, United Auto, Aerospace and Agr. Implement Workers of America (UAW) v. General Elec. Co.,* 714 F.2d 830 (8th Cir.1983). "The court is to make this determination by applying the 'federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act.' *Moses H. Cone Memorial Hospital,* 460 U.S. at 24, 103 S.Ct. at 941." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 625, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985).[4] In making the decision, the Court is not to decide the merits of the dispute. *E.g., AT & T Technologies,* 475 U.S. 643, 649, 106 S.Ct. 1415, 1418–1419, 89 L.Ed.2d 648 (1986); *United Steelworkers of America v. American Mfg. Co.,* 363 U.S. 564, 568, 80 S.Ct. 1343, 1346–1347, 4 L.Ed.2d 1403 (1960).

■ The federal policy favoring arbitration is one factor which the court must consider in deciding the issue of arbitrability, but the ultimate issue is whether the parties in fact agreed that the particular dispute was to be resolved by the process of arbitration rather than the judicial process. The Court of Appeals made this clear in *Recold, S.A. de C.V. v. Monfort of Colorado, Inc.,* 893 F.2d 195, 197 (8th Cir.1990):

"While the Supreme Court has announced a policy in favor of arbitration to resolve national and international disputes, *see Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987); *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 638–39, 105 S.Ct. 3346, 3359–60, 87 L.Ed.2d 444 (1985), arbitration remains a dispute resolution mechanism which is not imposed absent both parties' consent. *See Volt Information Sciences, Inc. v. Bd. of Trustees* [489] U.S. [468], [477–78], 109 S.Ct. 1248, 1255, 103 L.Ed.2d 488 (1989); *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347 [1352–53] 4 L.Ed.2d 1409 (1960); *United States v. Panhandle Eastern Corp.,* 672 F.Supp. 149, 153 (D.Del.1987)."

The threshold for determining whether a matter is one upon which arbitration should be ordered has been said to be very low.[5] However, this policy applies more to those cases in which the grant of arbitral authority is broad, and in situations where it may be said with some assurance that the arbitrators will be able to bring particular abilities to the process by reason of experience and intimate knowledge of the contract issues involved. Labor matters are one common example. In those circumstances, the parties may be said to have preferred that an arbitrator with a background in such contracts decide the matter, rather than a judge or a jury.[6] The policy favoring arbitration is not to be blindly applied when the reasons which underlie it are not present, such as the case presently before the Court.

With this background in mind, we turn to the specifics of the contracts before the Court.

---

4. A choice of law provision in a contract allows the parties to adopt the procedural arbitration rules of a particular state, but federal law is applied in deciding substantive issues of arbitrability. *Ackerberg v. Johnson,* 892 F.2d 1328, 1333–34 (8th Cir.1989); *AT & T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 648, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986).

5. *E.g., Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983) ("Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . ."); *AT & T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 650, 106 S.Ct. 1415, 1419, 89 L.Ed.2d 648 (1986) ("There is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.' Doubts should be resolved in favor of coverage. *Warrior & Gulf,* 363 U.S. at 583–583, 80 S.Ct. at 1352–1353").

6. *See, e.g., Twin City Monorail, Inc. v. Robbins & Myers, Inc.,* 728 F.2d 1069, 1072 (8th Cir.1984) "[D]ecisions calling for an interpretation of intent which is weighted toward arbitrability involve either or both a labor arbitration clause or an extremely broad arbitration clause;" *Gelco Corp. v. Baker Industries, Inc.,* 779 F.2d 26, 28 (8th Cir.1985); *Sharon Steel Corp. v. Jewell Coal and Coke Co.,* 735 F.2d 775, 778 (3d. Cir.1984).

*Existence of Arbitration Agreements*

 Plaintiff contends that the License Agreement has expired pursuant to the provisions of Section 9 of the License Agreement, which provides that Hunt–Wesson's "obligation to pay royalties hereunder for Licensed Products ... shall continue until expiration of the last-to-expire of any U.S. Licensed Patents containing a claim which covers a Licensed Product." In 1992, the Watkins patents were declared invalid, and Defendant thereupon discontinued making payments under the License Agreement. Plaintiff argues that this demonstrates that the License Agreement terminated in 1992.

Although Section 9 is captioned "TERM AND TERMINATION," the Section does not set forth a termination date. It only specifies the date upon which Hunt–Wesson may discontinue making royalty payments. In the event of any dispute between the parties as to the matters upon which they agreed, (such as, for example, whether Hunt–Wesson paid all royalties it agreed to pay,) that dispute would be governed by the License Agreement. If Defendant was licensed under the '420 patent, it's right to continue making those sales, and its responsibility for payment of royalties on sales of the products covered by that patent, cannot be said to have terminated. Defendant would also continue to be liable under the License Agreement for any other covered sales for which Defendant had not made a royalty payment.

Thus with the License Agreement, as with the Settlement Agreement, duties and responsibilities are created which remain obligations without regard to dates. The parties remain under a burden to act in a way that is not inconsistent with these agreements, even if their affirmative duties may be said to have been completed.

As the Court noted in *PaineWebber Inc. v. Hartmann*, 921 F.2d 507 (3d Cir.1990), "the parties have it within their power to specify the date and hour at which their obligation to arbitrate is to end.... Where they have done so there is nothing fairly arguable to refer to arbitration." *Id.* at 511 *quoting National R.R. Passenger Corp. v. Boston and Maine Corp.*, 850 F.2d 756, 762 (D.C.Cir. 1988). They have not done so in this case.

*Agreement to Arbitrate*

 Parties are free to adopt broad or narrow agreements to arbitrate—or none at all. The American Arbitration Association recommends this contract language:

"Any controversy or claim arising out of or relating to this contract, *or* the breach thereof, shall be settled by arbitration...."

(Declaration of Summers, 5/16/95, Ex. 3, p. 4, emphasis supplied). This language has been characterized by the Supreme Court as "a broad arbitration clause." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 398, 87 S.Ct. 1801, 1803, 18 L.Ed.2d 1270 (1967). *See also* 9 U.S.C. § 2.

In contrast to the broad AAA language, each agreement to arbitrate in this case is more limited:

License Agreement
15. ARBITRATION
In the event of any controversy or claim arising out of a breach of this Agreement, before instituting litigation, the parties shall use their best effort to arbitrate in accordance with the Patent Arbitration Rules of the American Arbitration Association.
License Agreement, Section 15, Exhibit 6 to Summers Affidavit.

Since the agreement to arbitrate in this case is a narrow one, authorities relied upon by Defendant such as *Pennsylvania Data Entry, Inc. v. Nixdorf Computer Corp.*, 762 F.Supp. 96 (E.D.Pa.1990) are not applicable.

Settlement Agreement
7. In the event of any controversy or claim arising out of a breach of this Agreement, before instituting litigation, the parties shall arbitrate in accordance with the Patent Arbitration Rules of the American Arbitration Association.

Settlement Agreement, Paragraph 7, Exhibit 7 to Summers Affidavit.

The task of this Court is to analyze the dispute, and determine whether it is one which is covered by either of the agreements relied upon by Defendant. Since the parties

only agreed to submit to arbitration "a breach of this Agreement", the arbitrator would have jurisdiction only if the filing of the Complaint in this matter were properly construed as either a breach of the License Agreement or the Settlement Agreement. That is not the case here. What Defendant truly seeks is an equitable amendment to the Agreements, so as to grant to it an implied license under the '420 patent. It also seeks recovery under the equitable theory of the "implied covenant of good faith and fair dealing." There is nothing which would indicate that the parties agreed that disputes of this nature should be submitted to arbitration.

The Complaint in this matter alleges that Defendant's microwave popcorn products infringe the '420 patent owned by Plaintiff. Defendant contends that the parties agreed to submit the issues raised by the Complaint to arbitration; that its License Agreement and Settlement Agreement provided it with an implied license under the '420 patent; and that the issue of whether that is true should be resolved by an arbitrator. It filed a Demand for Arbitration on April 21, 1995.

This represents a recent point of view of Defendant. Defendant's Answer, filed February 27, 1995, does not claim License, even though under Rule 8(c) License is an Affirmative Defense. *Raceway Components, Inc. v. Butler Mfg. Co.*, 707 F.Supp. 856, 861 (S.D.W.Va.1989). The failure to plead the defense of License is not dispositive, since the opportunity to Amend the Answer to assert that defense is not foreclosed. It does serve as evidence that Defendant itself did not consider itself to be licensed under the '420 patent.

The claim of arbitrability was not asserted on a number of earlier occasions when it might be expected to have been asserted if there truly was such an agreement:

—It was not asserted in response to a letter of December 2, 1991 from Plaintiff to Defendant, (Van Brunt Affid., Ex. A), in which General Mills invited Defendant to "explore ideas" about licensing under the '420 patent;

—It was not asserted in response to the more direct letter of June 22, 1992 from General Mills to Defendant (Van Brunt Affid., Ex. B) in which General Mills stated that it was "considering whether to offer licenses for the microwave popcorn field under these patents"; and

—It was not asserted as a defense in the Answer of Defendant, filed on February 27, 1995.

The failure earlier to assert the claim of arbitration does not constitute a waiver of the right to arbitrate under the facts here present since judicial decisions make it clear that a party may not lightly be said to have waived the arbitration process.[7] However, the evidence of delay is persuasive in determining whether in fact this is a dispute which the parties agreed should be decided by an arbitrator. If the parties had truly agreed that the question of license under the '420 patent was one which they had agreed to submit to an arbitrator, it is to be expected that Defendant would have taken that position much earlier. It appears instead to be more of an afterthought. Defendant offered no evidence by way of Affidavit or argument to explain the delay in any other way.

At oral argument, Defendant said that Plaintiff's lawsuit constitutes a breach of paragraph 3 of the Settlement Agreement, (the release clause), and is also a breach of paragraphs 3 and 5 of the License Agreement (the License Grant and the Release). Mindful of the requirement that the Court refrain from deciding the merits of the claim, the Court concludes that the Defendant's claim of breach of contract does not plausibly invoke the jurisdiction of the arbitrator. *See Nordin v. Nutri/System, Inc.*, 897 F.2d 339 (8th Cir.1990).

As to the Settlement Agreement, it is not plausible to claim that the '420 patent was among those as to which Plaintiff released Defendant, nor that the parties agreed to arbitrate such a claim. The release clause in the Settlement Agreement applies only to claims "that have arisen or could arise from

---

7. *Stifel, Nicolaus & Co. Inc. v. Freeman*, 924 F.2d 157, 158–59 (8th Cir.1991); Contrast the facts of this case with *Ohio–Sealy Mattress Mfg. Co. v. Kaplan*, 712 F.2d 270, 273 (7th Cir.) *cert. denied*, 464 U.S. 1002, 104 S.Ct. 509, 78 L.Ed.2d 698 (1983).

the allegations in the complaint and counter-claims" in the 1988 litigation. The evidence establishes that no allegations were made in the 1988 litigation with respect to the '420 patent, and that such allegations could not have arisen, because General Mills, the owner of that patent, was not a party to the litigation.[8] Since infringement *vel non* of the '420 patent was not and could not have been in issue in the 1988 litigation, it was not among the patents as to which a release was granted.

In the License Agreement Plaintiff and Golden Valley granted to Defendant a license of the "Licensed Patents", which allowed Defendant to sell "Licensed Products" in the "Licensed Territory." All of the quoted phrases were carefully defined in the License Agreement. Defendant makes much of the fact that its products which are said to infringe the '420 patent are the very same "Licensed Products" which are licensed by the License Agreement, and that they are being sold in the very same "Licensed Territory" expressly licensed by Plaintiff. However, Defendant fails to provide any evidence whatsoever that the '420 patent is among the "Licensed Patents" under which Defendant is licensed.

Defendant acknowledged in oral argument that if its product were not a Licensed Product, there would not be a basis upon which to claim arbitration, and that if the products were not being sold in a Licensed Territory there would be no arbitration available. Since the '420 patent is not a Licensed Patent, Defendant fails to assert an arbitrable claim.

The License Agreement defines "Licensed Patents" as follows:

"A. Licensed Patents shall include United States Patents Nos. 4,735,513 and 4,878,-765, Canadian Patent No. 1,252,827, and any reexamination certificate, reissue, or other U.S. or Canadian Patent, which has now or in the future may issue from any continuation, continuation-in-part, or divisional application which relies in whole or in part upon the application for U.S. Patent No. 4,735,513 for a U.S. or Canadian priority filing date."

It is obvious that this definition does not include the '420 patent. Had the parties desired to provide a license under patents in addition to those licensed, they could easily have employed language which would have accomplished that purpose.[9] General Mills offers uncontradicted testimony and evidence by way of Affidavit which substantiates that the failure to list the '420 patent was not an oversight.[10]

Even if the parties had desired to grant a license under the '420 patent at the time they negotiated the 1991 Agreements, it would not have been possible to do so. At that time, DuPont was the exclusive licensee under the '420 patent, although it was owned by Plaintiff. Moreover, if Defendant did have an implied License under the '420 Patent, it would not have been entitled to discontinue paying royalties in 1992, as it did, since the "last to expire" patent would have been the '420 Patent, which has not expired.

For all of these reasons, the Court concludes that Defendant has not demonstrated that it is entitled to a Stay of these judicial proceedings.[11] It does not necessarily follow that Plaintiff's motion for an Injunction must then necessarily be granted, for it is conceivable that in some circumstances the arbitra-

8. The fact that General Mills was not a party to the *litigation* serves to define the issues that "could have been" raised in that litigation. The Court does not overlook that General Mills was a party to the 1991 *agreements*.

9. For example, when Golden Valley and General Mills reached an agreement to exchange licenses, they not only specified the licensed patents by number, but they added "any other ... Patents which are owned or controlled by Licensor ... which cover the Products." That was not done in this case.

10. The '420 patent was not unknown to Defendant at the time of the 1991 Agreements. It was cited as prior art in the litigation. General Mills has marked its microwave popcorn products with the patent number for a period of a few years.

11. Party seeking stay of an action pending arbitration has the burden of proof. *Nederlandse Erts–Tankersmaatschappij, N.V. v. Isbrandtsen, Co.*, 339 F.2d 440, 442 (2d. Cir.1964).

tion proceedings could properly proceed in parallel with judicial proceedings.

Plaintiff argues that it is entitled to an injunction against the arbitration proceedings because otherwise its ability to secure an injunction against infringement will be threatened. (Plaintiff's '420 patent will expire in May of 1988, and if the arbitration process delays the resolution of this matter beyond that date, Plaintiff will be entitled only to damages.) Plaintiff goes too far in suggesting that an injunction must issue in every case where infringement of a patent is found. *Illinois Tool Works, Inc. v. Grip–Pak Inc.,* 906 F.2d 679, 682–83 (Fed.Cir. 1990); *Calmar, Inc. v. Emson Research, Inc.,* 838 F.Supp. 453, 456 (C.D.Cal.1993). In this case, Plaintiff's own decisions as to the timing of the assertion of its patent rights against Defendant is at least as much to blame for any delay in the resolution of that issue.

Under the facts presented in this case, however, an injunction against permitting the arbitration process to go forward is required. The arbitration process would merely duplicate these issues appropriate for resolution in judicial proceedings. Irreparable harm may be found in this fact alone. *Paine–Webber, Inc. v. Hartmann,* 921 F.2d 507, 515 (3d Cir.1990); *see also Nordin v. Nutri/System, Inc.,* 897 F.2d 339 (8th Cir.1990). Since the parties have not agreed to the arbitration process, the duty to engage in the process is itself irreparable damage in this case.

### RECOMMENDATION

It is recommended as follows:

1. That the Court deny Defendant's Motion for a Stay of these proceedings; and

2. That the Court grant a preliminary injunction as follows: Plaintiff General Mills, Inc., Defendant Hunt–Wesson, Inc., and their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, may be, and hereby are, restrained and enjoined from participating, or engaging in any way in the arbitration proceeding commenced by Hunt–Wesson against

General Mills on April 21, 1995 before the American Arbitration Association, until further Order of this Court.

Dated: May 30, 1995.

Pursuant to Fed.R.Civ.P. 6(a), Local Rule 1.1(f), and Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties within ten days after service of a copy of this Report, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and file a complete transcript of the hearing within ten days after service of the Report and Recommendation.